(January 4, 1912.)

## IRWIN BISSETT, Appellant, v. PIONEER IRRIGATION DISTRICT et al., Respondents.

[120 Pac. 461.]

IRRIGATION DISTRICT LAW—BOND ISSUE ELECTION—VALIDITY OF STATUTE—QUALIFICATION OF ELECTORS.

(Syllabus by the court.)

1.   The act of March 6, 1911 (1911 Sess. Laws, p. 461), having been held unconstitutional and void, could not work a repeal of secs. 2375, 2376 and 2379, which that act sought to amend, and those sections are still in force and effect.

2.   Where an act of the legislature attempts to amend certain sections of the statute and to repeal the old sections or other sections of the statute supposed to be in conflict therewith and the amendatory act is held unconstitutional and void, such act does not work a repeal of the sections amended or sought to be repealed.

3.   Under the provisions of sec. 20, art. 1, of the constitution, the legislature has the power and authority to prescribe a property qualification for any person to vote at an election creating an indebtedness, but the legislature by the adoption of sec. 2396 of the Rev. Codes has not provided such a qualification for voting at an election to be held for the purpose of voting a bond issue in an irrigation district, and no such qualification has been required by the legislature.

4.   Under the provisions of sec. 2386 of the Rev. Codes, an irrigation district has the power and authority to issue bonds for the purpose of collecting drainage, waste and seepage water and storing the same for the irrigation of land within such district.

5.   As to whether or not an irrigation district may vote bonds for the purpose of constructing a drainage system within such irrigation district and draining overflowed and submerged lands, considered but not decided.

APPEAL from the District Court of the Seventh Judicial District, for Canyon County.   Hon. Ed. L. Bryan, Judge.

Suit for an injunction to restrain an irrigation district and the directors thereof from holding an election to vote upon

the question of a bond issue. Judgment for the defendant and plaintiff appealed. *Affirmed.*

Young & Brinck, for Appellant.

The property qualification contained in secs. 2375, 2376 and 2379, Rev. Codes, is clearly within the rule of *Pioneer Irrigation Dist. v. Walker,* and in violation of sec. 20, art. 1, of the constitution.

"If the provisions of an act are so connected in subject matter, dependent on each other, and designed to operate for the same purpose, or are otherwise so dependent in meaning that it cannot be presumed that the legislature would have passed one without the other, then if one part falls the entire act must fall." (*Cunningham v. Thompson,* 18 Ida. 149, 108 Pac. 898; *International Text Book Co. v. Pigg,* 217 U. S. 91, 30 Sup. Ct. 481, 27 L. R. A., N. S., 493, 18 Ann. Cas. 1103; *Campbell v. Bryant,* 104 Va. 509, 52 S. E. 638; *Blades v. Board of Water Commrs.,* 122 Mich. 366, 81 N. W. 271.)

An unconstitutional act of the legislature is as ineffectual as though it had never been passed. (*Boales v. Ferguson,* 55 Neb. 565, 76 N. W. 18.)

Sec. 2396 not being complete in itself, and not being rendered more so by reference to any other statute which is valid and existing, is uncertain and incapable of execution, and is invalid and of no force or effect. (*Knight v. Trigg, supra; Hettinger v. Good Road Dist. No. 1,* 19 Ida. 313, 113 Pac. 721.)

Rice, Thompson & Buckner, for Respondents.

The sections of the amendatory act which by implication repealed secs. 2375, 2376 and 2379 having been declared unconstitutional, the original sections must stand. (*Barker v. State,* 118 Ga. 35, 44 S. E. 874; *People ex rel. Akin v. Butler St. Foundry & Iron Co.,* 201 Ill. 236, 66 N. E. 349; *Ex parte Davis,* 21 Fed. 396.)

"The unconstitutional provision for a property qualification of voters contained in said secs. 2375, 2376 and 2379 can

be separated, so that though the unconstitutional provisions fall, the constitutional provisions may stand.'' (*Cornish v. Tuttle,* 53 Wis. 45, 9 N. W. 791; *People v. Kenney,* 96 N. Y. 295; *Browne v. City of Mobile,* 122 Ala. 159, 25 So. 223; *State v. Ray,* 153 Ind. 334, 54 N. E. 1067; *In re Abel,* 10 Ida. 288, 77 Pac. 621; *State v. Scampini,* 77 Vt. 92, 59 Atl. 201.)

AILSHIE, J.—The respondent, the Pioneer Irrigation District, was duly organized in the year 1901 under and in conformity with the irrigation district law, and the organization thereof was thereafter duly confirmed by a decree of the court. (*Pioneer Irrigation District v. Bradbury,* 8 Ida. 310, 101 Am. St. 201, 68 Pac. 295.) It has ever since been operating and doing business under and in conformity with the irrigation laws of the state. The case now before us involves the proposed action of the board of directors of the district in reference to calling a bond election for the purpose of voting an issue of bonds in the sum of $313,290 to carry out a plan which has been adopted for the collection of drainage, waste and seepage waters within the district, and the storage of the same for use in the irrigation of lands of the district. The appellant herein applied to the district court for an injunction to restrain and enjoin the directors from further proceeding in accordance with the plans proposed. The district court denied the application, and this appeal was thereupon prosecuted.

We will consider the questions presented in the order in which they are considered in the briefs.

1. The appellant assigns each of the conclusions of law made by the trial court as error, the first of which is as follows: ''That that portion of the act amending secs. 2375, 2376 and 2379 of the Revised Codes of Idaho, being held unconstitutional, said sections sought to be amended by said amendatory act are not affected.'' Appellant contends that since this court has held the act of March 6, 1911 (1911 Sess. Laws, p. 461), unconstitutional (*Pioneer Irrigation Dist. v. Walker,* 20 Ida. 604, 119 Pac. 304), and that act having repealed secs. 2375, 2376 and 2379, the result is that neither the act of

March 6, 1911, is, nor sections 2375, 2376 and 2379 are, in force or effect, and that an election cannot be held under either statute. This contention is not tenable. If the amendatory act fails as the act of March 6, 1911, has failed, it has no force or effect and cannot work the repeal, either by direct terms or by implication, of any other statute. The intention to repeal secs. 2375, 2376 and 2379 grows out of and resulted only from the purpose and intention of the legislature to amend and replace those sections by the act of March 6, 1911. There was no intention, however, to repeal those sections of the old statute without leaving something in their place and stead, and since the attempted legislation in place and stead of secs. 2375, 2376 and 2379 failed by reason of the unconstitutional provisions therein contained, the attempt to repeal or amend the old sections failed for the same reason. This is a well-established rule of law. (*Barker v. State,* 118 Ga. 35, 44 S. E. 874; *Aiken v. Butler Street Foundry and Iron Co.,* 201 Ill. 236, 66 N. E. 349; *Ex parte Davis,* 21 Fed. 396.)

2. The second conclusion of law made by the court is as follows: ''That the unconstitutional provision for a property qualification of voters contained in said secs. 2375, 2376 and 2379 can be separated, so that though the unconstitutional provisions fall, the constitutional provisions may stand.''

The election involved in this case is not such an election as is provided for by sec. 2375. That section provides for an election to determine whether or not a district shall be organized, and sec. 2376 provides the manner of conducting the election. We fail, therefore, to see wherein the construction or consideration of secs. 2375 and 2376 is involved in this case. The decision of this court in *Pioneer Irrigation District v. Walker,* 20 Ida. 604, 119 Pac. 304, was dealing with an election to be held subsequent to the organization of the district, and we did not in that case consider or pass upon the question as to the validity of a statute which prescribes *a property qualification for the purpose of participating in the organization of a district,* and for that reason, as well as the further reason that we do not consider secs. 2375 and 2376 necessarily involved in this action, we reserve the opinion of the court

thereon. Sec. 2379 is the section of the statute which applies to this case. That section governs "all elections in said district subsequent to the organization thereof," and it is to this section (2379) that sec. 2396 refers. This latter section is dealing with the subject of an election to vote on the question of the issuance of bonds. It provides, among other things, as follows: "The board of directors of an irrigation district shall call a special election at which it shall submit to the electors of said district possessing the qualifications prescribed by this title, the question whether or not the bonds of said district . . . . in the amount as determined, shall be authorized. . . . . Said election must be held and the results thereof determined and declared in all respects as nearly as practicable in conformity with the provisions of this title governing the election of officers." Now it is clear that sec. 2379 is unconstitutional in so far as it requires that a person shall be "a holder of land within the boundaries" of the irrigation district in order to entitle him to vote at an election of district officers. It was distinctly so held by this court in *Pioneer Irrigation Dist. v. Walker,* 20 Ida. 604, 119 Pac. 304, in passing on the act of March 6, 1911. The fact, however, that the statute attempts to require this extra qualification which is in violation of the constitution (sec. 20, art. 1) does not avoid or vitiate the entire statute. The unconstitutional portion can be eliminated and still leave the statute complete and operative. On the other hand, it cannot be reasonably said that this provision or qualification as to the right to vote was the inducement for the passage of this statute or that the legislature would not have passed the statute had the unconstitutional provision been eliminated. That an unconstitutional provision or requirement in an election law may be eliminated and the remainder of the statute be held valid and constitutional, has been held by the supreme court of Wisconsin in *Cornish v. Tuttle,* 53 Wis. 45, 9 N. W. 791. A similar conclusion was reached by the New York court of appeals in *People v. Kenney,* 96 N. Y. 295. In *Browne v. City of Mobile,* 122 Ala. 159, 25 So. 223, the supreme court of Alabama held that where a statute required a qualifica-

tion for the office of city recorder that was contrary to the
provisions of the constitution, the unconstitutional portion
of the statute might be eliminated and the remainder of the
statute be held valid. A similar view was expressed by the
supreme court of Indiana on a kindred question in *State v.
Ray,* 153 Ind. 334, 54 N. E. 1067, and by the supreme court
of Vermont in *State v. Scampini,* 77 Vt. 92, 59 Atl. 201.

The third conclusion of law reached by the court is as fol-
lows: ''That eliminating the unconstitutional provisions from
said sections eliminates said property qualifications in elec-
tions for bond issues, as the legislature has not specifically
provided a property qualification in a specific method set out
for holding elections for bond issues in particular.''

It would have been competent for the legislature to have
prescribed a property qualification for persons offering to
vote at an election held for the purpose of voting a bonded
indebtedness. (Sec. 20, art. 1, of the constitution in *Wiggin
v. City of Lewiston,* 8 Ida. 527, 69 Pac. 286.) The legislature,
however, has not attempted to prescribe any special qualifica-
tions for electors at elections held for voting bonds. Sec.
2396 which provides for bond elections, provides, among other
things, that the same qualifications for voting at such an elec-
tion shall be required as are required to vote at an election
held for the election of officers of the district. Sec. 2379 pro-
vides the qualification of electors for voting at elections held
for the purpose of electing officers of the district, and that
section contains the property qualification which has been
held unconstitutional in *Pioneer Irrigation District v. Walker,
supra.* It follows, therefore, that this provision in sec. 2379
cannot be held void and unconstitutional for one purpose and
valid for another. In other words, it cannot be held void
as it stands in the section for the purposes therein designated
and then be held valid by reference from sec. 2396. We must
therefore conclude that no special qualifications have been
prescribed for voting at elections held for the purpose of vot-
ing a bonded indebtedness.

The fourth conclusion of law made by the trial court is as
follows: ''That the general plan so adopted by said board of

directors of the Pioneer Irrigation District, on the 18th day of November, 1911, to construct drainage ditches to drain certain lands within said district and to collect drainage, seepage and waste water and to utilize the major portion thereof for the irrigation of the lands within the boundaries of said district was adopted by said board under authority of law, and said board has authority under the law to call a bond election for the purpose of carrying out said general plan.'' Sec. 2386 of the Revised Codes confers upon the board of directors of an irrigation district the power and authority ''to acquire, either by purchase, condemnation or other legal means, all lands and water rights and other property necessary for the construction, use and supply, maintenance, repair and improvement of said canal or canals and works, including canals and works constructed and being constructed by private owners, lands for reservoirs for the storage of needful waters and all necessary appurtenances. . . . . Said board may also construct the necessary dams, reservoirs and works for the collection of water for said district and do any and every lawful act necessary to be done that sufficient water may be furnished to each land owner in said district for irrigation purposes.'' In the case at bar, the district already has a canal system and supply of water, but this supply is apparently not adequate for the entire district, and at the same time, by reason of seepage and percolation, the lowlands of the district are becoming flooded and damaged so that they are practically useless to their owners. The engineer and board of directors have examined and investigated conditions and concluded that by constructing a drainage system these seepage, percolating and flood waters may be collected and thereby reclaim the flooded and overflowed lands and that the water so collected may be carried off into storage reservoirs and utilized in the irrigation of other lands within the district. This is, to our minds, clearly within both the letter and the spirit of the statute. The statute does not require that water collected for the use of the district shall be collected in any specific manner or from any particular source. On the other hand, the water necessary

for the irrigation of a district may be collected from springs, wells, flowing streams, or by the impounding of surface, drainage, percolating or seepage water. The source from which the water is derived is a matter of no consequence. The object and purpose to be accomplished is the irrigation of lands. Water for such purpose may be acquired by natural flow or it may be procured by pumping. Indeed, it is often necessary to pump water for irrigation purposes in order to raise it to a sufficient elevation to procure a flow through the canals and ditches in order to irrigate the higher lands of the district.

Aside from the foregoing considerations it would seem at first blush that a district might be authorized under the law to construct a drainage system where necessary for the protection and preservation of lands within the district. The law clearly authorizes the formation of irrigation districts and procuring a sufficient supply of water for such purpose. If, in the course of performing this work, seepage and percolating waters from the canal system flood and overflow the lowlands of land owners within the district, 'the district is certainly under an obligation to take care of such seepage or overflow and protect such lands (*Stuart v. Noble Ditch Co.,* 9 Ida. 765, 76 Pac. 255) ; and it would seem that the district would have the implied power to take such steps as would be necessary in order to protect land owners from damage or the loss of the use of their lands.

Our examination of the record in this case fails to disclose any error in the judgment of the trial court and the judgment should therefore be affirmed. Judgment affirmed, with costs in favor of the respondent.

Stewart, C. J., and Sullivan, J., concur.